IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. CHRISTOPHER SMITH, Defendant. | 8:20-CR-78 MEMORANDUM AND ORDER ON MOTION TO VACATE UNDER 28 U.S.C. § 2255 |

### I. INTRODUCTION

This matter is before the Court on defendant Christopher Smith's Motion to Vacate Under 28 U.S.C. § 2255. Filing 248. After conducting an initial review, the Court ordered the Government to respond. Filing 240. The Government has filed a response opposing Smith's Motion. Filing 246. For the reasons stated herein, the Court denies grounds two and three of Smith's Motion and refers ground one, which alleges his former counsel failed to file a timely appeal at Smith's request, to the magistrate judge for an evidentiary hearing and to draft a findings and recommendation on that matter.

### II. BACKGROUND

While on patrol in Omaha, Nebraska, on December 18, 2019, Omaha Police officers stopped a Cadillac CTS for a traffic violation. Filing 216 at 7. Defendant Smith, a passenger in the vehicle, had a firearm case with a Taurus PT709 9mm handgun between his legs and approximately 5.26 grams of a mixture containing methamphetamine. Filing 216 at 7. During a post-*Miranda* interview, Smith admitted to using the firearm while selling drugs. Filing 216 at 7.

A few months later, drug task force officers learned that Smith was selling methamphetamine and was using a Silver Mercedes to store narcotics. Filing 216 at 7. On February

1

28, 2020, officers observed the Mercedes parked outside Smith's apartment and saw a codefendant enter the Mercedes briefly before returning to Smith's apartment. Filing 216 at 7. Shortly thereafter, Smith and his two codefendants entered a Chrysler 200, prompting officers to converge and place them under arrest. Fling 216 at 7. During a search of Smith and the Mercedes, officers located narcotics and two cell phones. Filing 216 at 7. Additional narcotics and drug paraphernalia were discovered in subsequent searches during the investigation. Filing 216 at 7–8. In a post-*Miranda* interview, Smith explained that his codefendants received drugs from a source in Mexico and that the conspiracy had made multiple 30-pound deliveries to Omaha since August of 2019. Filing 216 at 7–8.

Based on these facts, a grand jury issued a Superseding Indictment on June 17, 2020, charging Smith with five criminal offenses, including trafficking in methamphetamine, using a firearm during drug trafficking, and being a felon in possession of a firearm. Filing 32 at 1–2. Pursuant to a Rule 11(c)(1)(B) plea agreement, Smith pleaded guilty to conspiracy to distribute 50 grams or more of methamphetamine actual, possession with intent to distribute a mixture or substance containing methamphetamine, and using a firearm with drug trafficking. Filing 147 at 1. At his change-of-plea hearing, the magistrate judge inquired if Smith was satisfied with his counsel. Filing 153 at 21. Smith answered, "Yes." Filing 153 at 21. Smith also testified that he had reviewed the petition to enter a plea of guilty and the plea agreement with his counsel and discussed possible defenses. Filing 153 at 17–22, 25. When the magistrate judge asked Smith about notes he had written in his petition to enter a plea of guilty making various complaints, Smith explained that he had issues with his detention facility but had no problems with his counsel's representation. Filing 153 at 21–22.

On May 4, 2022, the Court sentenced Smith to 186 months of incarceration, which was at the low end of his guidelines range after accounting for a departure. Filing 218 (Text Minute Entry); Filing 219. About three months later—well after Smith's deadline to appeal had passed—Smith filed a notice of appeal. Filing 225. A "Notice of Excusable Neglect" accompanied Smith's notice of appeal. Filing 227. In this "Notice," Smith explained that the Bureau of Prisons placed him at USP Leavenworth after sentencing, which "denied him access" to his attorney. Filing 227 at 1. The "Notice" further stated that when the Bureau of Prisons transferred Smith to other facilities, he and his family members called his former defense counsel but received no response. Filing 227 at 1. Smith also implied in his contemporaneously filed "Motion to Withdraw Counsel" that he was not able to speak with his former defense counsel before being placed at USP Leavenworth. Filing 228 at 1–2.

The Court construed Smith's "Notice of Excusable Neglect" as a motion to extend the time to file an appeal. Filing 229 at 1. The Court denied this request, noting that Federal Rule of Appellate Procedure 4(b)(4) did not allow the Court to extend the time to file an appeal more than 30 days after the time to file an appeal had expired. Filing 229 at 1 (citing Fed. R. App. 4(b)(4)). Later, on August 17, 2022, the Eighth Circuit denied Smith's appeal as untimely. Filing 236 at 1.

On May 1, 2023, Smith filed the pending Motion to Vacate under 28 U.S.C. § 2255. The Motion raises three grounds for habeas relief, all related to ineffective assistance of counsel: (1) his attorney failed to file a direct appeal as Smith requested; (2) his attorney did not properly advise him about pleading guilty and his plea agreement; and (3) his attorney did not provide or let him view discovery. Filing 238 at 2–7. Smith also makes a passing reference about the search and seizure of "the automobile" by law enforcement, stating that "law enforcement lacked credible corroboration or justification for a simple traffic stop." Filing 238 at 2. On May 9, 2023, the Court

3

conducted an initial review of Smith's Motion pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings. After concluding that, at least for one of Smith's grounds for relief, it did not "plainly appear" that Smith was not entitled to relief, the Court ordered the Government to respond. Filing 240 at 1–2.

The Government filed its response opposing Smith's Motion on June 5, 2023, along with an affidavit from Smith's former counsel. Filing 246; Filing 247-1. In the affidavit, Smith's former counsel avers that he never received any communication from Smith requesting an appeal within 14 days of the sentencing hearing. Filing 247-1 at 1. According to Smith's former counsel, he did not hear about Smith's desire to appeal until July of 2022, when Smith left multiple voicemails stating that former counsel failed to file an appeal despite Smith requesting him to do so. Filing 247-1 at 2. Smith's former counsel further explains that he reviewed body cam footage with Smith and discussed challenging the stop of his vehicle. Filing 247-1 at 3. Ultimately, given the difficulty with successfully suppressing evidence based on the stop of Smith's vehicle, Smith elected to enter into a plea agreement without moving to suppress evidence. Filing 247-1 at 3.

### III. ANALYSIS

#### A. Applicable Standards

Smith brings his Motion pursuant to 28 U.S.C. § 2255, which permits federal prisoners to request that the sentencing court "vacate, set aside, or correct" a sentence by showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) (internal quotation marks

omitted) (quoting *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011)). Relief under § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012) (quoting *Sun Bear*, 644 F.3d at 704).

The judge receiving a § 2255 motion to vacate must first determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court must order the United States to respond and consider holding a hearing. 28 U.S.C. § 2255(b); *see also* Rule 4(b) of the Rules Governing Section 2255 Proceedings. "No hearing is necessary 'if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016). In that situation, the Court must deny the motion. *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. On the other hand, when ruling on a habeas petition requires resolving a factual dispute, generally the Court must hold an evidentiary hearing. *See United States v. Sellner*, 773 F.3d 927, 929 (8th Cir. 2014).

**B. Motion to Vacate**

In his Motion, Smith raises three grounds for habeas relief, each directed at supposed deficiencies in his former counsel's representation. Smith may assert ineffective assistance of counsel arguments for the first time in a habeas proceeding. *See Massaro v. United States*, 538 U.S. 500, 509 (2003) ("[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255.").

5

The Sixth Amendment secures a criminal defendant's right to effective assistance of counsel, including when the defendant is deciding whether to plead guilty. *See Strickland v. Washington*, 466 U.S. 668, 684–86 (1984); *Meza-Lopez v. United States*, 929 F.3d 1041, 1044–45 (8th Cir. 2019) (discussing effective assistance in the guilty plea context). "To prove ineffective assistance of counsel, [Smith] must show (1) his attorney's performance fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for that deficient performance, the result of the proceeding would have been different." *Love v. United States*, 949 F.3d 406, 409 (8th Cir. 2020) (citing *Strickland*, 466 U.S. at 688). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome' or 'a substantial, not just conceivable, likelihood of a different result.'" *Meza-Lopez*, 929 F.3d at 1044–45 (quoting *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014)). There is a "strong presumption" that counsel rendered reasonable performance. *Id*.

As previously mentioned, Smith raises three grounds for habeas relief: (1) his attorney failed to file a direct appeal as Smith requested; (2) his attorney did not properly advise him about pleading guilty and his plea agreement; and (3) his attorney did not provide or let him view discovery. Filing 238 at 2–7. The Court addresses each ground separately and denies each of them without a hearing.

1. *Providing or Letting Smith View Discovery*

The Court begins with Smith's allegation that that his former counsel "fail[ed] to provide or even let [Smith] view discovery." Filing 238 at 7. Smith argues that "[d]iscovery was never presented to [him] after requesting it many times." Filing 238 at 2. Nevertheless, Smith admits that his counsel told him that "it would be illegal to give [the discovery] to [him]." Filing 238 at 2. In his affidavit, Smith's former counsel explains that he does not "just send copies of the discovery

material to clients," and instead watched some of the officers' body camera footage of the stop of Smith's vehicle with Smith. Filing 247-1 at 3. Smith's former counsel further attests that he mailed Smith a USB drive with the body worn camera footage of the stop along with a plea agreement from the Government. Filing 247-1 at 3.

A court cannot accept allegations offered in a habeas petition as true when "they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *See Walker*, 810 F.3d at 580. Here, Smith's allegation that his former counsel never provided him with or let him view discovery is contradicted by the record. Particularly salient is Smith's testimony at his change-of-plea hearing. *See Thompson v. United States*, 872 F.3d 560, 566 (8th Cir. 2017) ("[A] defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." (alteration in original) (quoting *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997))). After acknowledging that he understood he was under oath, Smith testified that he had discussed defenses to his charges with his counsel and that he was satisfied with his counsel's answers to his questions. Filing 153 at 19–21, 25. Smith's filings also show that he understood the evidence against him and had reviewed discovery. In his petition to enter a plea of guilty, Smith wrote that he had had enough time to speak with his counsel, that he had told his attorney everything about his case, and that he was satisfied with his counsel's performance. Filing 146 at 1. In his "Motion to Withdraw," filed contemporaneously with his belated notice of appeal, Smith admitted that he received "Rule 16 discovery" after signing his plea agreement. Filing 228 at 2. He also highlighted potential arguments against the search and seizure of his vehicle, contending that "[l]aw [e]nforcement lacked credible corroboration," which indicates that he reviewed evidence about his traffic stop with his former attorney. Filing 228 at 2.

Smith's vague allegation that his counsel never let him view discovery is contradicted by the record. Based on the information before the Court, the Court finds credible Smith's former counsel's affidavit outlining that he reviewed body camera footage of the traffic stop with Smith and sent him footage along with the plea agreement. Filing 247-1 at 3. Such representation was not objectively unreasonable. See Love, 949 F.3d at 409; cf. Blade v. United States, No. 01-002301CRWGAF, 2009 WL 1330805, at *3 (W.D. Mo. May 12, 2009) (concluding that counsel was not ineffective for not giving the defendant access to discovery materials in his cell).

But even if the Court credited Smith's allegation that his counsel did not let him view any discovery, his claim would still fail for lack of prejudice. As an initial matter, Smith gives no explanation for what he would have done had he viewed discovery and how access to discovery would have changed the result of his criminal case. See Love, 949 F.3d at 409 (outlining that prejudice requires a showing that there is a "reasonable probability" that the "result of the proceeding would have been different"). His blanket assertion that he did not receive "discovery" does nothing to illuminate what he wanted and why. See United States v. Bjerknes, No. 17-CR-0234 (WMW), 2020 WL 1989393, at *5 (D. Minn. Apr. 27, 2020) (concluding that, even if counsel was ineffective for not giving the defendant broader access to discovery, there was no prejudice when the defendant "offer[ed] no plausible grounds for concluding that the result of the proceeding would have been different").

Smith claims that his former counsel "misled" him, which "caus[ed] [him] to plead guilty." Filing 238. It is true that a criminal defendant can show prejudice from counsel's deficient performance by demonstrating "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meza-Lopez, 929 F.3d at 1044 (quoting Frausto, 754 F.3d at 643). Yet, Smith gives the Court no details on what he

means by being "misled," nor does he affirmatively allege that he had any interest in going to trial. The Supreme Court has instructed that "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and should "instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Here, Smith gives no indication that he wanted to go to trial. Rather, the record shows Smith was extremely interested in pleading guilty with a plea agreement to receive a more favorable sentence. At sentencing, Smith spoke at length that he pleaded guilty when charged with crimes to obtain a favorable sentence. Smith's ultimate sentence reveals the wisdom in his decision to accept a plea deal. After departing downward, the Court sentenced Smith to 186 months in prison, which was six months above the mandatory minimum.[1] Smith provides no evidence or allegations demonstrating that he would have risked the opportunity for such a favorable sentence by going to trial had he not been "misled."

The Court rejects Smith's allegation that his former counsel did not provide him with or let him view discovery. Smith's counsel provided effective performance by reviewing the body camera footage of the traffic stop with Smith and sending him the body camera footage along with a copy of the plea agreement. Even if his counsel was ineffective, Smith fails to establish prejudice. Smith's ground for habeas relief related to counsel's provision of discovery materials to him is denied.

2. *Advice About Pleading Guilty and the Plea Agreement*

In his second ground for habeas relief, Smith claims that his former counsel rendered "deficient performance in advisement of plea agreement." Filing 238 at 5. Smith provides no

---

[1] Smith's drug trafficking convictions carried a mandatory minimum of 10 years, while his firearm conviction required a mandatory minimum of 5 years, consecutive to the sentence for his drug trafficking convictions. *See* 21 U.S.C. § 841(b)(1); 18 U.S.C. § 924(c)(1)(A).

9

further elaboration on how his former counsel did not properly advise him. Given the conclusory nature of this allegation, the Court is not required to accept it as true. *See Walker*, 810 F.3d at 580 (stating that a court does not have to accept allegations in a habeas petition as true when they are "conclusions rather than statements of fact"). Instead, the Court credits Smith's former counsel's averment that he mailed Smith a copy of the plea agreement to review and told Smith that he would answer any questions he had. Filing 247-1 at 2. Smith's former counsel explained to Smith that he could contest his charges by moving to suppress evidence, go to trial, or pursue a plea agreement to increase the likelihood of a more favorable sentence. Filing 247-1 at 2–3. After being advised, Smith chose the latter option. Filing 247-1 at 2.

The record also contradicts Smith's claim that he did not receive proper advice about pleading guilty and his plea agreement. *See id.* (stating that allegations that "are contradicted by the record" "cannot be accepted as true"). At his change-of-plea hearing, Smith testified that he had discussed his plea agreement and his petition to enter a plea of guilty with his counsel and that his counsel had answered any questions he had satisfactorily. Filing 153 at 19–21. When the magistrate judge addressed objections Smith wrote in his petition to enter a plea of guilty,[2] Smith attested that he had no objections to his counsel's representation and that any communication issues he had related solely to conditions at his detention facility. Filing 153 at 21–22. Smith also wrote in his petition to enter a plea of guilty that he had had enough time to speak with his counsel, that he had told his attorney everything about his case, and that he was satisfied with his counsel's performance. Filing 146 at 1. The record in this case firmly establishes that Smith's former counsel provided Smith with objectively reasonable representation.

---

[2] Smith wrote the following in his petition, "I object to being transferred to CCA Leavenworth KS (far from my Attorney) so that I cannot visit with him and go over my discovery, as well as having a facility wide lockdown because of all the violence, suicides, killings, staff assaults and putting me in further danger than I should be and not able to call and correspond with my [illegible] with any questions." Filing 146 at 2.

10

Even if there was any basis to find that Smith's former counsel was ineffective, Smith does not establish prejudice. As previously mentioned, Smith never alleges that he would have rejected the Government's plea offer and proceeded to trial. See Meza-Lopez, 929 F.3d at 1044 (outlining that, to demonstrate prejudice, the defendant must show a "reasonable probability" that "he would not have pleaded guilty and would have insisted on going to trial"). Instead, the record shows Smith's interest in pleading guilty with a plea greement to increase his chances of receiving a favorable sentence. Ultimately, Smith's sentence was favorable to him, as it fell just six months above the mandatory minimum.

Smith's conclusory allegation that his counsel gave "deficient" advice about his plea agreement and pleading guilty is conclusory and contradicted by the record. The record establishes that Smith's former counsel gave effective representation regarding his advice about Smith taking a plea agreement and, even if he did not, Smith fails to show prejudice. Smith's second ground for habeas relief is denied.

3. *Filing an Appeal*

In his remaining ground for habeas relief, Smith claims that his attorney "failed to file a direct appeal." Filing 238 at 4. According to Smith, his former counsel did not file an appeal within fourteen days of the criminal judgment as Smith requested. Filing 238 at 2. In his affidavit, Smith's former counsel avers that Smith did not ask him to file an appeal within fourteen days of the sentencing hearing. Filing 247-1 at 2.

A criminal defense attorney's representation is *per se* unreasonable if he or she fails to file an appeal at a client's request. See Witthar v. United States, 793 F.3d 920, 922 (8th Cir. 2015). If an attorney fails to file an appeal, prejudice is presumed. See id. at 922–23. Thus, failing to file an appeal at the defendant's request automatically satisfies both *Strickland* prongs and requires a court

11

to resentence the defendant so he or she can timely appeal. *See Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000).

Nevertheless, to obtain relief, a defendant "must show that he manifestly 'instructed [his] counsel to file an appeal.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (alteration in original) (quoting *Barger*, 204 F.3d at 1182). "A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Id.* (alteration in original) (quoting *Barger*, 204 F.3d at 1182). Here, the Government characterizes Smith's Motion as making a "bare assertion" that he requested an appeal, and points to Smith's former counsel's affidavit as establishing that Smith never made a timely request. Filing 246 at 6–7. Yet, the Eighth Circuit has explained that a petition alleging that "(1) [the defendant] instructed her trial attorney to file an appeal and (2) [the attorney] failed to do so" is, standing alone, "generally . . . sufficient to warrant a hearing." *Witthar*, 793 F.3d at 923 (citing *Watson v. United States*, 493 F.3d 960, 964 (8th Cir. 2007)). And, when the only evidence that affirmatively refutes a defendant's allegation that he requested an appeal is his former counsel's affidavit, the Court "cannot 'mak[e] a factual determination based on the relative credibility of [these individuals] without the benefit of an evidentiary hearing.'" *Id.* (alterations in original) (quoting *Franco v. United States*, 762 F.3d 761, 765 (8th Cir. 2014)); *see also Franco*, 762 F.3d at 763 (explaining that a hearing is required when "the claim is inadequate on its face or if the record affirmatively refutes the factual assertions" in the petition).

Here, Smith's allegations are sufficient to make a claim for ineffective assistance of counsel. Beyond the affidavit from Smith's former counsel, the Court does not have evidence before it that directly contradicts Smith's allegations. Therefore, the Court must hold an

12

evidentiary hearing to assess credibility. The Court will refer the matter to the magistrate judge to hold a hearing and draft a findings and recommendation on the issue.

## IV. CONCLUSION

For these reasons, the Court denies all of Smith's grounds for habeas relief except for his claim that his former counsel failed to file a timely appeal at his request. Accordingly,

IT IS ORDERED

1. The Court dismisses grounds two and three of defendant Christopher Smith's Motion to Vacate, Filing 238; and

2. The Court refers the issue of whether Smith requested his counsel to file an appeal and his counsel failed to do so, as alleged in ground one of Smith's Motion, to the magistrate judge for an evidentiary hearing and to draft a findings and recommendation on the matter.

Dated this 24th day of July, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge