IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CHRISTOPHER SMITH,<br><br>　　　　　Defendant. | 8:20CR78<br><br>**FINDINGS AND RECOMMENDATION** |

　　　　This matter is before the undersigned magistrate judge on Defendant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. (Filing No. 238.) Pursuant to the Memorandum and Order entered by the district judge,[1] Defendant's Motion was denied on July 24, 2024, except as it pertained to Defendant's allegation that his former counsel failed to file a notice of appeal as he requested. (Filing No. 253.) This issue was referred to the undersigned to hold an evidentiary hearing and submit a findings and recommendation to the district court judge. (Filing No. 253.)

　　　　The undersigned held an evidentiary hearing on Defendant's §2255 Motion on January 5, 2024.[2] A transcript of the proceedings has been filed and the Motion is ripe for disposition.[3] After hearing the testimony from Defendant and his former counsel, and in assessing their credibility, the undersigned finds Defendant did not direct his attorney to file an appeal and will therefore recommend that the remainder of Defendant's § 2255 Motion be denied.

---

[1] The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska

[2] By agreement, Defendant appeared at the hearing by video conferencing. (TR. 2.)

[3] At the conclusion of the evidentiary hearing, the Court, with no objection from the parties, took judicial notice of the Court docket and filings. (TR. 48.)

## BACKGROUND

On June 17, 2020, Defendant was charged with five criminal offenses, including trafficking in methamphetamine, using a firearm during drug trafficking, and being a felon in possession of a firearm. (Filing No. 32.) Pursuant to a plea agreement, Defendant pleaded guilty to conspiracy to distribute 50 grams or more of methamphetamine actual, possession with intent to distribute a mixture or substance containing methamphetamine, and using a firearm with drug trafficking. (Filing No. 147.)

At his change-of-plea hearing, Defendant stated that he read and understood the plea agreement. (Filing No. 153.) Defendant further indicated that if he had any questions about the plea agreement, he asked his attorney, Jason Troia ("Mr. Troia"), and that his attorney answered his questions to his satisfaction. (Filing No. 153.) The undersigned asked Defendant if he understood that in his plea agreement, he was waiving and giving up his right to appeal his conviction and sentence. (TR. 153.) Defendant responded, "Yes." (Filing No. 153.) The undersigned also asked Defendant if he understood he was waiving and giving up his right to file any post-conviction proceedings, except in certain circumstances, as set forth in his plea agreement. (Filing No. 153.) Defendant responded "Yes." (Filing No. 153.) Defendant testified that he had reviewed the petition to enter a plea of guilty and the plea agreement with Mr. Troia. (Filing No. 153.) The undersigned inquired if Defendant was satisfied with Mr. Troia's representation, and Defendant responded "Yes." (Filing No. 153.) Defendant stated he did not have any complaints concerning the manner that Mr. Troia represented him. (Filing No. 153.)

Defendant was sentenced by the district judge to 186 months of incarceration on May 4, 2022. (Filing No. 218; Filing No. 219.) Approximately two months later, Defendant, acting *pro se*, filed a notice of appeal. (Filing No. 225.) On August 17, 2022, the Eighth Circuit Court of Appeals denied Defendant's appeal as untimely. (Filing No. 236.)

Defendant filed the pending § 2255 Motion on May 1, 2023. The Motion raised three grounds for habeas relief based on alleged ineffective assistance of counsel: (1) Mr. Troia failed to file a direct appeal as Defendant requested; (2) Mr. Troia did not properly advise Defendant about pleading guilty and his plea agreement; and (3) Mr. Troia did not provide or let him view

discovery. The government filed an opposition to Defendant's Motion on June 5, 2023, along with an affidavit from Mr. Troia. (Filing No. 247-1.)

In the affidavit, Mr. Troia averred that he did "not recall" Defendant asking him to file an appeal but did recall telling Defendant to call him to discuss his sentence at the conclusion of the sentencing hearing. (Filing No. 247-1.) Mr. Troia averred that both he and Defendant were disappointed in the percentage of sentence reduction Defendant received. (Filing No. 247-1.) Mr. Troia stated he did not have a conversation with Defendant within 14 days of his sentencing, and that he did not recall receiving a voicemail or missing any calls from Defendant during that 14-day period. (Filing No. 247-1.) Mr. Troia explained in his affidavit that when he receives a voicemail, a copy of the voicemail recording is emailed to his business email account. (Filing No. 247-1.) Mr. Troia stated that he searched his email inbox for the 14-day period following Defendant's sentencing hearing and did not find an email or voicemail from Defendant directing him to file an appeal. (Filing No. 247-1.) Mr. Troia further stated that he did not receive any calls or messages from Defendant's family during the 14-day appeal window directing him to file an appeal. (Filing No. 247-1.) Mr. Troia averred that the first time he recalled learning of Defendant's desire to appeal was in the latter part of July 2022, when Defendant left multiple voicemails complaining about Mr. Troia not filing an appeal. (Filing No. 247-1.) Mr. Troia stated that he responded to Defendant by letter, explaining that an appeal was not filed because Defendant waived his right to appeal and did not have any non-frivolous issues. (Filing No. 247-1.)

**HEARING TESTIMONY**

Defendant testified at the evidentiary hearing. Defendant testified that he retained Mr. Troia to represent him in the criminal case at issue. (TR. 8.) Defendant acknowledged that he entered into a plea agreement and stated he discussed the terms of the plea agreement with Mr. Troia via Zoom while Defendant was housed at Leavenworth. (TR. 8.) Defendant testified he had a copy of the plea agreement in front of him at the time he reviewed it with Mr. Troia and that he was able to read through it. (TR. 8-9.) Defendant stated he remembered there was a provision in the plea agreement in which he agreed to waive his right to appeal, but that he did not understand the waiver completely. (TR. 9.) Defendant stated Mr. Troia went over the appeal waiver provision with him, and that it helped his understanding of the waiver. (TR. 9.) Defendant testified that he

3

understood he was giving up his right to appeal to some degree, but that he still believed he would be able to appeal his case. (TR. 10.) Defendant acknowledged that the undersigned went over the appeal waiver with him at the change of plea hearing, but he stated he did not fully understand the right of appeal he was giving up. (TR. 10.)

Defendant testified that when he was sentenced on Wednesday, May 4, 2022, the district judge informed him he had the right to appeal within 14 days. (TR. 10-11.) Defendant testified that after the district judge said he had the right to appeal, he told Mr. Troia that he wanted to file an appeal. (TR. 11.) Defendant stated that as he was being escorted out of the courtroom, Mr. Troia told him to call him on Friday to discuss it. (TR. 11.) Defendant does not recall anything else discussed during that interaction or that there was any other topic of conversation besides an appeal. (TR. 14.) Defendant explained that he wanted to appeal because he was given a 15-year sentence and the sentencing judge told him he had the right to appeal. (TR. 23-24.)

Defendant testified he was unable to call Mr. Troia on the Friday following his sentencing because he was taken from the Cass County jail (where he was housed at the time of sentencing) at approximately 4:30 a.m. that Friday morning and transferred to another facility in Leavenworth, Kansas. (TR. 11; TR. 15.) Defendant stated he attempted to call Mr. Troia while he was at Leavenworth but was not able to talk to him. (TR. 11-12.) Defendant said that he either left a message with Mr. Troia's secretary or a voicemail whenever he called. (TR. 12.) Defendant testified he also asked his wife, daughter, and brother to call Mr. Troia. (TR. 11.) Defendant said his wife and daughter called Mr. Troia and left messages, but that Mr. Troia did not respond. (TR. 11.) Defendant acknowledged that he did not know for certain whether his family called Mr. Troia, but that they told him they did. (TR. 19.) Defendant testified he had no proof that his family called Mr. Troia. (TR. 19-20.)

Defendant testified that the first communication he had with Mr. Troia following his sentencing was when he received a letter from Mr. Troia on July 29, 2022. (TR. 12-13; Ex. 101.) In the letter, Mr. Troia stated: "I did not file an appeal for a number of reasons. First, you waived your right to appeal as part of the deal. Second, you had no nonfrivolous issues." (Ex. 101). Mr. Troia did not mention any direction from Defendant to file an appeal in the letter. (Ex. 101.)

4

Mr. Troia also testified at the evidentiary hearing. Mr. Troia has been a criminal defense attorney who has represented defendants in federal court for approximately 24 years. (TR. 29.) He has represented approximately 15-20 defendants before the Eighth Circuit Court of Appeals. (TR. 40.) Mr. Troia testified that he went through the appeal waiver with Defendant. (TR. 31.) Mr. Troia stated he was extremely disappointed in the percentage of sentence reduction Defendant received based on Defendant's cooperation. (TR. 31-32.) Mr. Troia testified that he had no more than 15 seconds' worth of discussions with Defendant immediately following his sentencing in the courtroom. (TR. 32.) Mr. Troia stated that he thinks the conversation started with Defendant expressing how he was dissatisfied with the sentence and that he told Defendant they should talk about it. (TR. 32.) Mr. Troia stated his understanding of the conversation with Defendant was that they were going to talk about where to go from there, whether an appeal was something they should try, and whether they would try to hold out for some additional cooperation and sentence reduction down the road. (TR. 34.) Mr. Troia stated there was also some unfinished business with a case involving Defendant in Iowa. (TR. 34.)

Mr. Troia testified that he anticipated Defendant would call him in the days following the sentencing. (TR. 32; TR. 34.) Mr. Troia explained that, in his mind, the nature of the phone call would be to discuss the possibility of an appeal in the 14-day window. (TR. 44.) Mr. Troia stated he also thought they would discuss the fact that Defendant had information about more individuals that had not yet been resolved, and that there was a pending case in Iowa that they were still negotiating. (TR. 44.)

Mr. Troia was asked by the government's attorney if he remembered Defendant instructing him to file an appeal during their conversation in court immediately after the sentencing hearing, and Mr. Troia responded, "I know he did not instruct me to." (TR. 33.) Mr. Troia explained that he knew he was not instructed to appeal because there is a difference between "when a client says, 'I want to talk about my appeal,' 'I'd like to appeal,' or 'file an appeal.'" (TR. 33.) Mr. Troia stated that if he is directed to file an appeal, he feels like he has no other choice, and so he was not instructed to file an appeal. (TR. 33.) Mr. Troia stated that had he been instructed to file an appeal, he would have had a conversation with Defendant due to the status of the case, but that he would have gotten the paperwork together and sent it to Defendant for his signature to file his appeal.

(TR. 33-34.) Mr. Troia testified that you must file an appeal when you are instructed to do so, and that you "don't just ignore it for your own reasons." (TR. 44.)

On cross-examination, Defendant's counsel questioned Mr. Troia about his conversation with Defendant that occurred immediately after sentencing. (TR. 41.) Defendant's counsel asked Mr. Troia what Defendant did to indicate his dissatisfaction with his sentence, and Mr. Troia stated he did not recall. (TR. 41.) Defendant's counsel then stated: "You had also said that you know [Defendant] did not instruct you to file an appeal. Did [Defendant] indicate in any way any desire or any, I guess, questions about an appeal of his case?" (TR. 41.) Mr. Troia responded, "I can't say for certain." (TR. 41.) Defendant's counsel then asked, "Do you remember at all what [Defendant] had told you?" (TR. 41.) Mr. Troia responded, "No." (TR. 41.) Defendant's counsel asked if Defendant even said the word "appeal," and Mr. Troia responded that he could not remember. (TR. 41-42.) On re-direct, the government's counsel asked Mr. Troia whether it was possible that Defendant "indicated either a willingness or want to discuss with you an appeal in that conversation after the sentencing hearing?" (TR. 45-46.) Mr. Troia responded that it was possible, but that he could not recall for certain. (TR. 45-46.)

Mr. Troia testified that other than the brief conversation immediately following sentencing, he did not speak to Defendant during the period in which Defendant could have filed an appeal. (TR. 36.) Mr. Troia stated that he does not remember talking to Defendant's family during that period, and that he did not receive any voicemails from Defendant's family during that time. (TR. 39.) Mr. Troia testified that, based on this lack of communication, he believed Defendant had accepted the sentence and was not going to pursue an appeal. (TR. 36.)

During the evidentiary hearing, Mr. Troia was also asked about his office's system of tracking phone calls and voicemails. (TR. 36.) Mr. Troia explained that if nobody answers the phone in his office, calls go to a general voicemail that allows an individual to select the attorney that the voicemail should go to. (TR. 36.) If an attorney receives a voicemail, an email is generated and the email is sent to the attorney's inbox with an audio clip of the voice message. (TR. 36.) Mr. Troia stated that occasionally, a receptionist will take handwritten messages. (TR. 36.) Mr. Troia explained that he searched his email for voicemail notifications for the period of 14-days after Defendant's sentencing and did not locate any emails concerning Defendant. (TR. 37.) Mr.

Troia further testified that prior to the evidentiary hearing, he performed another search and he found two email notifications for voicemails from Defendant dated June 15, 2022. (TR. 37-39.) Mr. Troia forwarded those emails to Defendant's current counsel, as well as counsel for the government. (TR. 38; TR. 47.)

In one of the June 15, 2022 voicemails, Defendant explained that he had been having trouble making calls because he had been moved three times and placed in quarantine. (Ex. 103.) Defendant also stated: "We never got to talk about anything, but I'm hoping that you filed a notice of an appeal I know we only have 14-days to do that and any reasonable person would want to do that." (Ex. 103.) In the other voicemail from June 15, Defendant expressed frustration over not being able to reach Mr. Troia and he asked Mr. Troia to call him. (Ex. 103.) Defendant agreed that he did not say anything in the voicemails about previously instructing Mr. Troia to file an appeal. (TR. 23; Ex. 103.)

When asked about his comment on the voicemail that "any reasonable person" would appeal, Defendant said that he had just received a 15-year sentence and the judge told him he had the right to appeal, so "[w]hy wouldn't I?" (TR. 23-24.) Defendant stated both he and Mr. Troia were unhappy with the sentence because Mr. Troia had told him that he would get, at minimum, a 50 percent reduction of his sentence due to Defendant's cooperation. (TR. 24.) Defendant stated that because neither he nor Mr. Troia were satisfied, "Why didn't [Mr. Troia] want to file an appeal?" (TR. 24.) Defendant was asked whether he was hoping Mr. Troia had appealed because he previously asked him to do so, or just because he thought a reasonable person would appeal. (TR. 25.) Defendant responded it was because he asked Mr. Troia to appeal. (TR. 25.)

Mr. Troia was questioned on cross-examination regarding the date discrepancies concerning the voicemails. (TR. 42-43.) Mr. Troia's affidavit indicated the voicemails were received in July 2022. ([Filing No. 247-1](Filing No. 247-1).) Mr. Troia explained that he misremembered the correct timeframe when he wrote the affidavit because the affidavit was prepared nearly a year after the voicemails were received. (TR. 42.)

7

## DISCUSSION

The issue before the Court concerns one question: Whether Defendant instructed Mr. Troia to file an appeal. Defendant claims he instructed Mr. Troia to file a notice of appeal immediately after sentencing, as he was being led out of the courtroom. Mr. Troia denies receiving an instruction to appeal.

"[A]n attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to section 2255 relief, no inquiry into prejudice or likely success on appeal being necessary." *Barger v. United States,* 204 F.3d 1180, 1182 (8th Cir. 2000). "Even if the client waived his right to appeal as part of a plea agreement, prejudice is presumed if the client asked his attorney to file a notice of appeal and the attorney did not do so." *United States v. Sellner,* 773 F.3d 927, 930 (8th Cir. 2014).

However, a defendant wishing to appeal "must have made manifest [his] desire to appeal by expressly instructing [his] attorney to appeal." *Nupdal v. United States,* 666 F.3d 1074, 1076 (8th Cir. 2012). "A bare assertion by the petitioner that he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *United States v. Luke,* 686 F.3d 600, 606 (8th Cir. 2012) (quotation omitted). "A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255." *Deroo v. United States,* 223 F.3d 919, 925 (8th Cir. 2000).

It is undisputed that Defendant spoke to Mr. Troia very briefly at the conclusion of the sentencing hearing and that Mr. Troia indicated to Defendant that they would speak further by phone in a few days. The only dispute is the actual content of that short conversation. Having heard and observed the testimony, as well as having considered all the evidence, the undersigned finds Mr. Troia to be credible in his assertion that he was not expressly instructed to file an appeal. Rather, the evidence shows Defendant and Mr. Troia agreed in the courtroom to speak further in the coming days about several different matters, including the prospect of filing an appeal and other legal matters Mr. Troia was assisting Defendant with.

Mr. Troia is an experienced criminal attorney with years of practice in federal court. Mr. Troia testified at several points during the hearing that if he was instructed to file an appeal, he would have done so. Mr. Troia expressed his understanding of his obligation to appeal when

instructed to do so, despite any disagreement with the merits of an appeal. Mr. Troia's July 2022 letter to Defendant sets out the grounds for Mr. Troia's decision not to file an appeal. The content of this letter does not necessarily show Mr. Troia was trying to excuse himself from ignoring a direction to appeal. Rather, the Court construes the letter as setting out an explanation of Mr. Troia's thoughts regarding the propriety of an appeal.

The Court recognizes that there are some discrepancies between Mr. Troia's affidavit and his hearing testimony. In his affidavit, Mr. Troia stated he did "*not recall*" Defendant asking him to file an appeal. At the hearing, however, Mr. Troia stated he *knows* Defendant did not instruct him to appeal. At the hearing, Mr. Troia noted the differences between clients directly instructing an attorney to appeal, versus just generally stating they would like to talk about an appeal. Mr. Troia testified that if he had been directed to file an appeal, he would have done so. He also highlighted his understanding that he cannot ignore a direction to appeal. Based on this, the undersigned finds that it is most likely that Mr. Troia's affidavit was inartfully drafted and does not show Mr. Troia was trying to be deceptive. Further supporting this conclusion is Mr. Troia's willingness to assist in resolving this matter. Mr. Troia searched his email not once, but twice, ahead of the evidentiary hearing. The only reason the June 2022 voicemails mentioning an appeal were recovered is because Mr. Troia expanded his search beyond the 14-day time for appeal. He then provided these emails to the attorneys. His cooperation in this regard bolsters his credibility.

The Court appreciates that Defendant was generally forthright at the hearing. Diminishing Defendant's credibility, however, is the content of the voicemail left on June 15, 2022. Defendant did not mention that he directed Mr. Troia to file an appeal. Rather, he stated that a "reasonable person" would want to appeal. To the Court, the content of his voicemail shows that Mr. Troia never received an express instruction to appeal, but instead Defendant only *hoped* Mr. Troia had appealed because they were both dissatisfied with Defendant's sentence.

Further diminishing Defendant's credibility is his contention that he did not understand the appeal waiver in his plea agreement. At his change of plea hearing, the undersigned discussed the plea agreement with Defendant in detail. The undersigned asked Defendant if he understood the plea agreement and specifically told Defendant that under the plea agreement, he was waiving or giving up his right to appeal. Defendant stated he understood he was giving up that right. Defendant also stated he read the plea agreement before he signed it and that he understood it.

9

Nevertheless, at the evidentiary hearing, Defendant testified that he did not completely understand the waiver. This discrepancy causes the undersigned to doubt Defendant's credibility.

Based on the evidence and testimony presented at the evidentiary hearing, the undersigned finds Defendant's assertion that he instructed Mr. Troia to file a notice of appeal is not credible. The undersigned further finds Mr. Troia's assertion that he was never instructed to file an appeal is credible. The undersigned concludes that Defendant did not instruct Mr. Troia to file an appeal. Because that is the only remaining issue in Defendant's § 2255 motion, the undersigned will recommend that the remainder of Defendant's § 2255 motion be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Brian C. Buescher that Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ([Filing No. 238](#)) be denied.

Dated this 28th day of February, 2024.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

### ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.